# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* A. J. SMITH, Minor.

UNPUBLISHED
May 9, 2017

No. 335035
Wayne Circuit Court
Family Division
LC No. 10-492502-NA

Before: M. J. KELLY, P.J., and BECKERING and SHAPIRO, JJ.

PER CURIAM.

Respondent appeals as of right the order terminating his parental rights to the minor child, AJS, under MCL 712A.19b(3)(c)(*i*), (c)(*ii*), (g), and (j). The trial court did not clearly err in finding a statutory ground to terminate respondent's parental rights, nor did it clearly err in finding that termination of respondent's parental rights was in AJS's best interests. Accordingly, we affirm.

## I. BASIC FACTS

AJS was born drug positive, and shortly after his birth, his mother's parental rights were terminated.[1] Although respondent was incarcerated at the time, he established that he was AJS's legal father by signing an affidavit of parentage. The Department of Health and Human Services (the Department) did not initially seek termination of respondent's parental rights. Instead, he was provided with a case services plan that required him to attend parenting classes, find suitable housing and income, participate in substance abuse counseling, submit to random drug screens, and attend supervised visits with his son. It appears that respondent was incarcerated for approximately the first year of the child protective proceedings. During that period, AJS was placed in a nonrelative foster home, and respondent participated in services available in prison. When respondent was released, AJS continued placement in a nonrelative foster home, and respondent continued to participate in services. The record reflects that he completed parenting classes, attended some of his parenting time visits, earned his GED, found employment, and had suitable housing.

---

[1] AJS's mother is not a party to this appeal.

However, after his release from prison, it became apparent that respondent had an ongoing substance abuse problem. Throughout the duration of the case, he missed 21 drug screens. Further, he tested positive for various substances on six occasions. Respondent denied using cocaine, heroin, or morphine despite the fact that he tested positive for them. Respondent believed that the screens were inaccurate because he was smoking marijuana, but it did not always show up in his drug screens. Respondent also spent 16 months participating in individual substance abuse therapy. His therapist believed him to be partially compliant; however, the foster care caseworker testified that, based on respondent's positive and missed drug screens, respondent had failed to benefit from the therapy.

## II. STATUTORY GROUNDS

### A. STANDARD OF REVIEW

Respondent first argues that the trial court clearly erred when it found clear and convincing evidence to terminate his parental rights. "This Court reviews for clear error the trial court's factual findings and ultimate determinations on the statutory grounds for termination." *In re White*, 303 Mich App 701, 709; 846 NW2d 61 (2014). A trial court's findings of fact are clearly erroneous if "we are definitely and firmly convinced that it made a mistake." *Id*. at 709-710.

### B. ANALYSIS

To terminate parental rights, a trial court must find that the petitioner has established, by clear and convincing evidence, a statutory ground for termination. *In re White*, 303 Mich App at 713. The court terminated respondent's parental rights under MCL 712A.19b(3)(c)(*i*) and (c)(*ii*), which provide:

> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:
>
> (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.
>
> (*ii*) Other conditions exist that cause the child to come within the court's jurisdiction, the parent has received recommendations to rectify those conditions, the conditions have not been rectified by the parent after the parent has received notice and a hearing and has been given a reasonable opportunity to rectify the conditions, and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

More than 182 days elapsed between the initial dispositional hearing and the termination of respondent's parental rights. However, it does not appear that (c)(*i*) was established by clear and convincing evidence in this case. It was AJS's mother's substance abuse that led to adjudication,

not *respondent's* substance abuse. Thus, to the extent that the trial court relied on subsection (c)(*i*) it clearly erred.

Nevertheless, respondent's substance abuse qualifies as an "[o]ther condition" causing AJS to come within the court's jurisdiction. See MCL 712A.19b(3)(c)(*ii*). Further, respondent received services to rectify his substance abuse, including drug screens, substance abuse counseling, and a significant period of time to show compliance and benefit from the services offered. Despite the offered services, he continued to test positive or miss drug screens. And, although his last positive screen was in March 2016, he had missed drug screens after that date, including missing three screens in the approximately one-month period between the second day of the termination hearing and the third day of the termination hearing. There was also testimony that on one occasion respondent deliberately dumped a urine sample and then left after refusing to give a second sample. Moreover, despite the missed and positive drug screens, respondent testified that he did not believe he had a substance abuse problem. Indeed, his lawyer argued that the drug screens were not accurate given that respondent self-reported using marijuana on a regular basis despite the fact that it did not turn up in the drug screens.[2] AJS was three years old and had been in foster care for almost the entirety of his life. Based on the record before this Court, we cannot conclude that the trial court clearly erred in finding that respondent had failed to rectify the condition and would be unable to do so within a reasonable time considering AJS's young age.

Termination was also proper under MCL 712A.19b(3)(g) and (j). MCL 712A.19b(3)(g) provides that the court may terminate parental rights if "[t]he parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age." MCL 712A.19b(3)(j) provides that the court may terminate parental rights if "[t]here is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent." Respondent completed parenting classes, acted appropriately during visits with AJS, attended individual substance abuse therapy, and obtained suitable housing. However, respondent's failure to benefit from substance abuse therapy and to take advantage of the additional time the trial court afforded to rectify his substance abuse issue—as evidenced by his 21 missed drug screens, six positive screens, and refusal to even admit that he had a substance abuse problem—demonstrated his inability to provide AJS with proper care and custody within a reasonable time. Respondent had nearly two years after his release from prison to fully comply with his case service plan, but he instead challenged the accuracy of his positive screens, and denied the need to participate in inpatient substance abuse therapy. "A parent's failure to participate in and benefit from a service plan is evidence that the parent will not be able to provide a child proper care and custody." *In re White*, 303 Mich App at 710. In addition, "a parent's failure to comply with the terms and conditions of his or her service plan is evidence that the child will be harmed if returned to the

---

[2] Respondent testified that he stopped using marijuana in April 2016, which was about one month after respondent's last positive drug screen. However, he missed additional drug screens after April 2016, and he was aware that missed screens were counted as positives.

parent's home." *Id*. at 711. Accordingly, the trial court did not clearly err in terminating respondent's parental rights under MCL 712A.19b(3)(g) and (j).

## III. BEST INTERESTS

### A. STANDARD OF REVIEW

Respondent also argues that the trial court erred by finding termination to be in AJS's best interests. We review for clear error a trial court's determination regarding a child's best interests. *In re White*, 303 Mich App at 713.

### B. ANALYSIS

"The trial court must order the parent's rights terminated if the Department has established a statutory ground for termination by clear and convincing evidence and it finds from a preponderance of the evidence on the whole record that termination is in the children's best interests." *Id*. at 713; see also MCL 712A.19b(5). When making its best-interest determination, "the court may consider the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts Minors*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012) (citations omitted). Further considerations may include "a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *In re White*, 303 Mich App at 714.

Although respondent testified that he loved AJS, and the foster care caseworker acknowledged the existence of a bond between the two, the caseworker testified AJS had a stronger bond with his foster family. AJS lived with the foster family, a potentially pre-adoptive placement, for the majority of his life, and had never been in respondent's care. He was three years old at the time of termination. He had one unsupervised visit with respondent, but the visits were promptly switched back to supervised because respondent tested positive for heroin and cocaine. Despite respondent's knowledge that substance abuse served as the main barrier to reunification with AJS, respondent failed to fully benefit from therapy and refused to even acknowledge having any problem with drugs. AJS needed stability and permanence. He had already been in care for three years, and there were no signs that respondent was going to rectify his substance abuse issues in the near future. Therefore, the trial court did not err when it found termination of respondent's parental rights to be in AJS's best interests.

Affirmed.

/s/ Michael J. Kelly
/s/ Jane M. Beckering
/s/ Douglas B. Shapiro

-4-